Filed 5/20/13  P. v. Smith CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMES CRISMON SMITH,<br><br>    Defendant and Appellant. | 2d Crim. No. B237750<br>(Super. Ct. No. 2010014286)<br>(Ventura County) |

James Crismon Smith appeals a judgment following conviction of committing a lewd act with a child, attempting to dissuade a witness, and misdemeanor disobeying a domestic relations court order, with findings of a prior serious felony and strike conviction.  (Pen. Code, §§ 288, subd. (a), 136.1, subd. (a)(2), 273.6, subd. (a), 667, subd. (a), 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)[1]  We affirm.

*FACTS AND PROCEDURAL HISTORY*

Smith and Brandy A. were married and had three minor children, including daughter B.  The family lived with Smith's mother in Oxnard.  In 2008, Smith and Brandy A. separated, and in November 2009, they divorced.

During an argument in 2008, Smith assaulted Brandy A.  Brandy A. was then pregnant and suffered injuries from the assault.  Smith was charged and convicted of

_____

[1] All further statutory references are to the Penal Code unless otherwise stated.

spousal battery and sentenced to prison in February 2009. The sentencing court also issued a restraining order that stated that Smith "[m]ust not attempt to or actually prevent or dissuade any victim or witness from attending a hearing or testifying or making a report to any law enforcement agency or person."

When Brandy A. explained to B. that her father would be incarcerated for several years, B. looked frightened and stated that "her daddy made her touch his pee-pee." Several weeks later, B. asked her mother to explain "the white stuff" regarding her father's "pee-pee." Brandy A. informed B.'s school counselor and later police officers regarding B.'s statements.

On February 12, 2009, B. stated during a police interview that she touched her father's penis and engaged in oral copulation. She also stated that her father played "nasty" movies on the computer. The police interview was recorded and played at trial.

B. testified that when she was 10 or 11 years old, Smith touched her "in the wrong way" and that she touched his penis. B. described two incidents of molestation that occurred in her parents' bedroom and in the bedroom she shared with her brother. B. also stated that Smith showed her "nasty" movies on the television and on the computer. She added that he threatened to harm her if she informed anyone.

During Smith's confinement for spousal battery, he telephoned his mother and stated that he was "scared to death" that the prosecutor would charge him with child molestation. Smith asked his mother "to dodge" service of a subpoena and advise Brandy A. not to disclose her address when applying for welfare benefits. He also asked his mother to advise Brandy A. to obtain a post office box to conceal her whereabouts.

In later telephone calls, Smith's mother informed him that Brandy A. had moved to Arizona, and then Needles, California. Smith asked his mother to ask Brandy A. to videotape B. "saying [the molestation] did not happen." During another telephone call, Smith stated that his prosecution could not occur if the victim does not "show up."[2]

_____

[2] On March 8, 2010, the prosecutor dismissed the charges of child molestation because Brandy A. and B. did not appear at the preliminary examination. The charges were later refiled and a preliminary examination was held.

2

Smith's telephone conversations with his mother were recorded by the prison and jail authorities and played at trial.

Oxnard police officers later seized letters that Smith wrote to his mother during his confinement. A letter dated February 10, 2009, states that Brandy A. "needs to either move away or not let [B.] testify." In a letter dated March 3, 2010, Smith informed his mother that his investigator "needs to hear" that B. "lie[s] because she want[s] attention."

At trial, Smith testified and denied molesting B. or using the home computer to view pornography. Smith's mother also testified that she never saw pornography in her home.

*Evidence Regarding B.'s Credibility*

When Brandy A. and B. lived in Needles, B. informed her girlfriend T. that T.'s brother C. "tried to put his dick in her butt." C. testified at trial that this was not true and that B. was a friend of his younger sister T.

B. also informed a defense investigator that C. was her former boyfriend and that she broke up with him because he asked her to "suck his dingaling."

*Conviction and Sentencing*

The jury convicted Smith of committing a lewd act with a child, attempting to dissuade a witness, and misdemeanor disobeying a domestic relations court order. (§§ 288, subd. (a), 136.1, subd. (a)(2), 273.6, subd. (a).) It could not agree upon the charged count of oral copulation of a child under 10 years of age (count 1). (§ 288.7, subd. (b).) In a separate proceeding, Smith admitted suffering a prior serious felony strike conviction and serving two prior prison terms. (§§ 667, subd. (a), 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b).)

The trial court denied Smith's motion to strike the prior serious felony strike conviction pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504, and sentenced him to a prison term of 15 years. The court struck the prior prison term allegations and did not impose confinement for the misdemeanor violation of a domestic relations court order. It also imposed a $500 restitution fine, a $500 parole revocation

3

restitution fine (stayed), a $120 court security assessment, and a $90 criminal conviction assessment, ordered victim restitution, and awarded Smith 678 days of presentence custody credit.  (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.) The court dismissed count 1 at the request of the prosecutor.

Smith appeals and contends that the trial court erred by 1) excluding evidence relating to B.'s credibility, and 2) not instructing sua sponte regarding the statutory presumption that he acted without malice when he dissuaded B. from testifying. Smith asserts that the errors violate his federal and California constitutional rights.

*DISCUSSION*

*I.*

Smith argues that the trial court abused its discretion by excluding certain evidence regarding B.'s credibility.  The evidence included B. stating to T. that B.'s mother stated that T.'s father was a rapist, and that B. stated to T. that girlfriend C. showed her photographs of C.'s mother and the mother's boyfriend engaging in sexual acts.  Smith contends that the error is reversible and denies his constitutional rights to due process of law and to confront witnesses.

A trial court has broad discretion pursuant to Evidence Code section 352 to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time, or create substantial danger of undue prejudice, confusing the issues, or misleading the jury.  (*People v. Riccardi* (2012) 54 Cal.4th 758, 808.)  This discretion allows the trial court broad power to control the presentation of proposed impeachment evidence """"to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues.""""  (*Id.* at pp. 808-809.)  We review Evidence Code section 352 rulings pursuant to the abuse of discretion standard.  (*Riccardi*, at p. 809.)

Moreover, exclusion of marginal impeachment evidence pursuant to Evidence Code section 352 generally does not contravene a defendant's constitutional rights to confrontation and cross-examination.  (*People v. Pearson* (2013) 56 Cal.4th 393, 455.)  Although a defendant has a constitutional right to present all relevant evidence of

4

significant probative value in his favor, there is no right to pursue an unlimited inquiry into collateral matters. (*People v. Homick* (2012) 55 Cal.4th 816, 865.)

The trial court did not abuse its discretion by excluding evidence of B.'s statements regarding T.'s father or C.'s mother and the mother's boyfriend. The statements involved collateral matters -- sexual matters regarding T.'s father and C.'s mother -- and were made by B. following the charged crimes. The court permitted evidence, however, of B.'s statements to T. regarding T.'s brother's attempts at sexual acts with B. During summation, Smith argued that B. was not a credible witness in view of these false allegations regarding T.'s brother ("She's a liar. Might as well call it what it is"). The court's evidentiary ruling was not a "blanket exclusion" that stripped Smith of his defense. (*People v. Page* (1991) 2 Cal.App.4th 161, 185.)

*II.*

Smith contends that the trial court erred by not instructing sua sponte regarding the presumption afforded by section 136.1, subdivision (a)(3), regarding a family member who interferes with the administration of justice to protect the victim. He relies upon his isolated statement made to his mother requesting that Brandy A. make a video recording exonerating him because he did not "want to put [B.] through anything." Smith argues that the error is reversible and denies him due process of law and the right to present a defense pursuant to the federal and California constitutions.

Section 136.1, subdivision (a)(1) prohibits "[k]nowingly and maliciously" preventing or dissuading a witness or victim from testifying. Subdivision (a)(3) of the statute provides: "For purposes of this section, evidence that the defendant was a family member who interceded in an effort to protect the witness or victim shall create a presumption that the act was without malice." "Malice" means "an intent to vex, annoy, harm, or injure in any way another person, or to thwart or interfere in any manner with the orderly administration of justice." (§ 136, subd. (l).)

Smith did not request an instruction regarding the presumption against malice and did not rely upon the defense of protection of B. by dissuading her testimony. Such instruction would have been a "pinpoint" instruction relating Smith's relationship to

5

B. to the element of malice in an attempt to raise a doubt whether the prosecutor carried his burden of proof. Pinpoint instructions relate particular facts to a legal issue in the case, such as mistaken identification or alibi. (*People v. Wilkins* (2013) 56 Cal.4th 333, 348-349.) They should be given upon request when evidence supports the theory, but are not required to be given sua sponte. (*Id.* at p. 349.)

Here the trial court properly instructed regarding the elements of the crime of dissuading a witness and the prosecutor's burden of proof. (CALCRIM No. 2622.) It had no obligation to instruct sua sponte regarding the pinpoint instruction of section 136.1, subdivision (a)(3).

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P.J.

We concur:

YEGAN, J.

PERREN, J.

6

David M. Hirsch, Judge

Superior Court County of Ventura

_____


Gilbert W. Lentz, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Linda C. Johnson, Supervising Deputy Attorneys General, for Plaintiff and Respondent.